IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH BELLISARIO,              )<br>                                             )<br>         Plaintiff,                     )<br>                                             )<br>    -vs-                                   )<br>                                             )   Civil Action No.  05-395<br>                                             )<br>CLARKS LANDING MARINA OF ANNAPOLIS, INC., )<br>a corporation t/d/b/a CLARKS LANDING BOAT )<br>& YACHT SALES, ART JOHNSON, individually  )<br>and t/d/b/a ART JOHNSON MARINE SURVEYS,  )<br>DETROIT DIESEL CORPORATION and JOHNSON &)<br>TOWERS, INC.,                         )<br>                                             )<br>         Defendants.                 ) | |

AMBROSE, Chief District Judge.

# OPINION
## and
# ORDER OF COURT

### SYNOPSIS

Plaintiff purchased a pleasure craft, believing it to be a seaworthy vessel, and later discovered that it had significant defects.  He sued the seller, the engine manufacturer, the company who did repair work on the engines and the marine surveyor.  A variety of Motions to Dismiss are now pending.  For the reasons set forth below, all claims have either been withdrawn or are dismissed.  This case is closed.

1

## OPINION

Plaintiff Joseph Bellisario ("Bellisario") resides in Allegheny County, Pennsylvania. In April of 2003, Bellisario purchased a 1997 Sea Ray 500 Sundancer ("the Vessel") from Defendant Clarks Landing Marina of Annapolis, Inc. ("Clarks Landing). Prior to completing the sale, Bellisario retained the services of Defendant Art Johnson ("Johnson"), a marine surveyor, to perform an inspection of the Vessel. After consummation of the sale, Bellisario learned that the Vessel had significant problems both with the engines and the clean water tank.

He subsequently filed suit against Clarks Landing, Johnson, Detroit Diesel Corporation ("Detroit Diesel") - the engine manufacturer, and Johnson & Towers ("J&T") - who had previously performed repair work on the engines. Bellisario set forth claims for breach of contract, breach of warranty and misrepresentation. Jurisdiction was based upon the diversity of citizenship.

Defendant J&T has filed a Motion to Dismiss For Lack of Subject Matter Jurisdiction (Docket No. 2).[1] J&T represents that it is incorporated in the Commonwealth of Pennsylvania. See Docket No. 2, Ex. B. As Bellisario is a Pennsylvania resident, J&T reasons, complete diversity is lacking.

Bellisario does not dispute J&T's argument. Rather, he raises two alternatives. He asks this Court to transfer the case to the Second Circuit Court of the State of Maryland. Yet he offers me no authority on which to base a transfer. Bellisario asks,

---

[1] J&T also argued, in the alternative, that dismissal of the Complaint was warranted under Rule 12(b)(6).

2

as an alternative, to dismiss the claims only against J&T. See Docket No. 11, p .5. Although Bellisario does not reference Rule 41(a) of the Federal Rules of Civil Procedure, I will treat his request to dismiss the action against J&T as a Motion under Rule 41(a). Rule 41(a) permits a plaintiff to dismiss an action, without order of Court, at any time before the defendant has filed an answer or motion for summary judgment. J&T has neither filed an answer nor a motion for summary judgment. Accordingly, I will consider Bellisario to have withdrawn his claim against J&T. This withdrawal is without prejudice. J&T's Motion to Dismiss is therefore denied as moot.

Without J&T named as a Defendant, complete diversity jurisdiction exists. Because I previously granted Bellisario's Motion to Dismiss claims against Clarks Landing and Detroit Diesel, see Docket Nos. 8-2 and 9,[2] the claim remains only as to Defendant Johnson - the marine surveyor. Bellisario asserts three claims against Johnson - breach of contract, breach of express warranty and breach of implied warranty. Johnson seeks a dismissal of these claims. See Docket No. 15. He argues that language set forth in the survey report ("the Report") specifically precludes the assertion of Bellisario's claims. For the reasons set forth below, I agree.

## STANDARD OF REVIEW

In deciding a Motion to Dismiss, all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in a light most favorable to the plaintiff. Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir.

---

[2] Apparently Bellisario will arbitrate his claims against Clarks Landing and Detroit Diesel.

1988), cert. denied, 489 U.S. 1065 (1988). I may dismiss a complaint only if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45 (1957). In ruling on a motion for failure to state a claim, I must look to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide the defendants with adequate notice to frame an answer." Colburn, 838 F.2d at 666.

While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977). Moreover, the plaintiff must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. See Fed. R. Civ. P. 8(2)(a) and Conley, 355 U.S. at 45-46. Matters outside the pleadings should not be considered. This includes "any written or oral evidence in support of or opposition to the pleadings that provides some substantiation for and does not merely reiterate what is said in the pleadings." Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, § 1366 (West 1990).

## ANALYSIS

The parties agree that, on or about April 1, 2003, Johnson performed a "Pre Purchase Survey" of the Vessel and provided Bellisario a Report on the same. In that Report, Johnson estimated the market value of the Vessel to be $435,000.00 with the replacement value at $900,000.00. Bellisario claims that he relied upon Johnson's

representations in this regard, adjudged the Vessel to be "fit for navigation" and "seaworthy," and completed the purchase. He later learned that the engines had significant damage and that the clean water tank was cracked.

Bellisario argues that the Johnson's failure to disclose these defects in his Report constituted a breach of the agreement because the Vessel was not fit for navigation and was not seaworthy. He further claims that Johnson expressly warranted that the Vessel was fit for navigation and seaworthy and that Johnson breached this warranty by failing to disclose the defects. Finally, Bellisario contends that Johnson implied that his survey of the Vessel would be performed in accordance with industry standards and would disclose any defects or problems with the Vessel. According to Bellisario, Johnson breached this warranty by failing to disclose the engine defects and the crack in the clean water tank. Bellisario's arguments lack merit.

As to Bellisario's first claim, a cause of action for breach of contract under Pennsylvania law[3] consists of three elements: (1) the existence of a contract, including all of its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages. See Bishop v. GNC Franchising LLC, Civ. No. 5-827, 2005 WL 3263890 at * 3 (W.D. Pa. Dec. 1, 2005), citing, J.F. Walker Co., Inc. v. Excalibur Oil Group, 792 A.2d 1269, 1272 (Pa. Super. 2002). Here, if I look at the language of the contract, including its essential terms, I must conclude that Johnson never undertook a

---

[3] Neither party provides a choice of law analysis. J&T cites to Pennsylvania law and Bellisario cites to Maryland law. As the matters before me involve general black letter law common to virtually all jurisdictions, I need not resolve the choice of law dispute.

contractual duty to inspect either the engine or the clean water tank. Indeed, in the Report (which, along with a faxed cover page is all that Bellisario provides the Court with as documentation of the terms of the contract) Johnson specifically states that his "mechanical observation should not be viewed as a[n] ENGINE SURVEY." Johnson explains that "[n]o compression testing was done on the detroit diesels." See Docket No. 18-3, p. 7. The Report also makes clear that the water tank was located "under salon flooring" and that its condition was "Not Observed." Id., p. 5. Again, at the conclusion of the Report Johnson states:

> THIS SURVEY WAS CONDUCTED WITHOUT OPERATING MACHINERY, REMOVAL OF BULKHEADS, PANELING, CEILING OR OTHER PORTIONS OF THE VESSEL'S SUPERSTRUCTURE AND WITHOUT OPENING UP OF PROPULSION MACHINERY OR AUXILIARIES, TANKS OR FITTINGS FOR INTERNAL EXAMINATION, AND IS ISSUED SUBJECT TO CONDITIONS OBSERVED.

Id., p. 9. Given this clear language, Bellisario could not reasonably have expected that Johnson would make any inspection of, any assessment of, or base his conclusions as to the seaworthiness of the Vessel, on the engines or water tank. Indeed, Bellisario's claim would succeed only if I ignored the clear language and terms of the Report. I am bound by the terms of the contract. Those terms make clear that the contract did not contemplate an inspection of the engines or tank. As such, the contract claim must fail.[4]

Bellisario's breach of express and implied warranty claims suffer similar fates.

---

[4] On the fax cover sheet, Johnson stated that he would "follow up on the engine work ... and fax any information" to Bellisario. See Docket No. 18-3, p. 1. Apparently, Johnson never did so. Yet Bellisario's contract claim is not based upon a failure to do such work, but rather, the failure to disclose certain defects. As such, whether Johnson made certain promises in the fax cover sheet is irrelevant.

Again, as stated above, the Report makes clear that Johnson was not conducting an engine survey or assessing the condition of the water tank. Because the Report does not cover such items, Johnson cannot have made any express or implied warranties as to the condition of the same. Furthermore, the Report expressly and conspicuously disclaims any such warranties. The Report reads:

> EVERY REASONABLE EFFORT IS MADE BY THIS SURVEYOR TO PROVIDE AN ACCURATE REPORT ON ALL SURVEYS ATTENDED, HOWEVER, ALL REFERENCES AND OPINIONS STATED HEREIN ARE BASED UPON CONDITIONS AS THEY APPEARED, OR WERE REPORTED, TO THIS SURVEYOR <u>AND CARRY NO WARRANTY EITHER EXPRESSED OR IMPLIED</u>... .

<u>See</u> Docket No. 18-3, p. 9 (underscore added). Bellisario can point to no language in the Report where Johnson made warranties of any kind. Nor has he identified any case law suggesting that Johnson's disclaimer was ineffective. Absent such case law, the claims must be dismissed.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH BELLISARIO, | ) |
| | ) |
| Plaintiff, | ) |
| -vs- | ) |
| | ) Civil Action No. 05-395 |
| CLARKS LANDING MARINA OF ANNAPOLIS, INC., | ) |
| a corporation t/d/b/a CLARKS LANDING BOAT | ) |
| & YACHT SALES, ART JOHNSON, individually | ) |
| and t/d/b/a ART JOHNSON MARINE SURVEYS, | ) |
| DETROIT DIESEL CORPORATION and JOHNSON & | ) |
| TOWERS, INC., | ) |
| | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

## ORDER OF COURT

AND NOW, this **5th** day of January, 2006, after careful consideration, the Motion to Dismiss (Docket No. 15) is GRANTED. All claims against Defendant Art Johnson are dismissed.

It is further ORDERED that Plaintiff's claims against Defendant Johnson & Towers have been withdrawn as well as have Plaintiff's claims against Defendants Clarks Landing and Detroit Diesel. Accordingly, as no claims remain pending before this Court, this case is CLOSED.

BY THE COURT:


/s/ Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge